## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ETHAN SHEBESH individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 1:23-cv-4195 |
| v. | ) ) | Hon. Nancy L. Maldonado |
| ANCESTRY.COM DNA, LLC, a Delaware Corporation, and GENEANET, S.A., a French Corporation | ) ) ) ) | |
| *Defendants*. | ) ) | |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

1.      Plaintiff Ethan Shebesh brings this class action on his own behalf and also on behalf of all others similarly situated ("Class Members") against Defendants Ancestry.com DNA, LLC ("Ancestry") and Geneanet S.A., a wholly-owned subsidiary of Ancestry. Plaintiff and Class Members had (and continue to have) their identities used by Defendants in their advertisements without Plaintiff's or Class Members' written consent, in violation of Illinois law.

### THE PARTIES

2.      Plaintiff Ethan Shebesh is a resident of Will County, Illinois.

3.      Defendant Ancestry.com DNA, LLC is a privately-held Delaware corporation with its principal place of business in Utah.

4.      Defendant Geneanet S.A. is a French corporation with its principal place of business in Paris, France.

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over Defendants because: (i) they transact

business in this District; (ii) they have substantial aggregate contacts in this District; (iii) they

engaged, and continue to engage in, conduct that has a direct, substantial, reasonably foreseeable,

and intended effect of causing injury to persons in this District.

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

1332(d) & 1367 because: (i) this is a class action in which the matter in controversy exceeds the

sum of $5,000,000, exclusive of interest and costs; (ii) there are 100 or more class members; and

(iii) some members of the class are citizens of states different from the Defendants.

7.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2)

because a substantial part of the acts or omissions giving rise to the claims alleged herein

occurred in this District. Additionally, venue is proper under 28 U.S.C. § 1391(b)(3) because this

Court has personal jurisdiction over Defendant.

## BACKGROUND

### I.      The Illinois Right of Publicity Act

8.      In 1999, the Illinois Legislature enacted the Right of Publicity Act ("IRPA"),

codified at 765 ILCS 1075/1 *et seq.* As recognized by the Legislature, "The right to control and

to choose whether and how to use an individual's identity for commercial purposes is recognized

as each individual's right of publicity." 765 ILCS 1075/10.

9.      IRPA provides that a person "may not use an individual's identity for commercial

purposes during the individual's lifetime without having obtained previous written consent from

the person … or their authorized representative." 765 ILCS 1075/30(a).

10.     IRPA defines "Person" to mean "a natural or juristic person." 765 ILCS 1075/5.

11. "Commercial purpose" is defined to mean "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.*

12. "Identity" means "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id.*

## II. The Geneanet.org Website

13. Defendants own and operate the website www.geneanet.org, a genealogy website that enables individuals to share their genealogical information and connect with relatives and other Geneanet community members. Launched in 1996, today the Geneanet website isa "community of **more than 5 million** members who share their genealogical information for free: **more than 8 billion individuals in the family trees,** some digitized archival records, some family pictures, some indexes, all available through a powerful search engine."[1]

14. As with other genealogy websites, Geneanet allows its users to upload family history to build out an online family tree. The information uploaded may include relatives' names, as well as documents, photographs, historical documents, news articles, and the like.

15. Some of the information provided by Geneanet's users is available to the public for free. Upon accessing the Geneanet website, any person is able to enter the name of any individual via a searchbar on its homepage. After a limited number of pages are access, however, the public user is prompted to sign up for a free "teaser" membership.

---

[1] "About Geneanet," available at https://en.geneanet.org/legal/geneanet/ (emphasis in original).

16.     After entering this information, any public user of Geneanet who has signed up for the free "teaser" membership is provided with a listing of search results. Each search result corresponds to an actual person located via Geneanet's search engine who matches the name provided by the public user. The search results and related profiles on the Geneanet site corresponding to these individuals provide enough information to identify such individuals.

### III.    Defendants' Use of Plaintiff's Identity for Commercial Purposes

17.     Plaintiff and Class Members are among the 8 billion individuals who are identified on the Geneanet website. For example, searching for Plaintiff's last name, Shebesh, provides the following "free preview" result:



18.     Plaintiff Ethan Shebesh is the last name listed on the search result. As can be seen, the search result lists Plaintiff's full name, as well as his spouse's full name.

19.     In addition to the free searches that are accessible to the general public or to those who sign up for a "teaser" membership, Defendants also sell a "premium" membership (the "Premium Services"), which enables members to access additional information, documents, file types, archives, resources, search capabilities, and other database features not available to members of the general public.

5

20.     Defendants advertise the Premium Services by offering them on the website and denoting them with the letter "P" set in an orange circle, or an orange button stating "Become Premium!" For example, from the screenshot above, Defendants advertise as a Premium Service additional information about the individuals identified in the search results such as "Events" (including birth, marriage, and death), "Ancestry, "Pictures," and "Data Relevance":



21.      Defendants advertise the Premium Services on the free preview page showing Plaintiff's name in no less than 6 places.

22.     If a user accessing the free preview page seeks information included in the Premium Services, the user is immediately directed to a page soliciting a premium membership. For example, users who click on "Events" from the free preview page are routed to a page stating that the requested information is "Reserved for Premium members" and offering a 3-month membership for $12.50:

6



23.    Clicking on Plaintiff's name from the free preview page reveals other ways in which Defendants advertise the Premium Services using Plaintiff's identity. For example, users who click on Plaintiff's name are first directed to the following "Profile" page:



24.     In addition to advertising the Premium Services via the orange "Become Premium!" button, users are also solicited to sign up for a premium membership by seeking additional information from this "Profile" page. For example, clicking on the "Matches" tab leads to yet another page using Plaintiff's name to advertise the Premium Services:



25.     The purpose behind Geneanet's "free preview" and "Profile" pages showing Plaintiff's name and other identity attributes are singular: to entice users to purchase the Premium Services, which include "More accurate search criteria," "automatic alerts and matches," "unlimited access to indexes," and "full access to the digital Genealogy Library" across the entire Geneanet database. Premium memberships are priced at $12.50 for a three-month subscription, $50.00 for a one-year subscription, and $90.00 for a two-year subscription.

26.     Neither Plaintiff nor Class Members provided Defendant with written consent to use their names, likenesses, personal information, or identities in Defendants' advertisements for the commercial purpose of marketing premium subscriptions to its database. Had Geneanet requested Plaintiff's consent, Plaintiff would not have provided it. As detailed above, Defendants use Plaintiff's and Class Members' identities to advertise the for-profit Premium Services. By doing so, Defendants violate the IRPA.

8

27.     Defendants purposefully subject themselves to jurisdiction in this Court by knowingly using the identities of Illinois residents to advertise the Premium Services. Indeed, this lawsuit arises directly from Defendants' practice of acquiring information sufficient to identify Illinois residents, and then using that information to advertise the Premium Services to its users. In addition, Defendants directly advertise and sell the Premium Services to all of their users, including Illinois residents.

28.     Neither Plaintiff nor Class Members are or have ever been a Geneanet customer. Plaintiff and Class Members have no relationship with Geneanet whatsoever.

## IV.     Class Action Allegations

29.     Plaintiff seeks certification of the class set forth herein pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Specifically, Plaintiff seeks class certification of all claims for relief herein on behalf of a class defined as follows: All current and former Illinois residents who do not have a Geneanet.org membership and whose identity is incorporated in a "profile" on the Geneanet website or on a Geneanet "free preview" page which advertises a Geneanet premium subscription. Plaintiff is the proposed class representative for the Class.

30.     Plaintiff reserves the right to amend the Class definition upon completion of discovery when the contours and the parameters of the class become more apparent.

31.     Excluded from the class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

9

counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

32.     **Ascertainability:** The proposed Class is readily ascertainable because it is defined using objective criteria so as to allow Class Members to determine if they are part of the Class. Further, the Class can be readily identified through records maintained by Defendants.

33.     **Numerosity (Rule 23(a)(1)):** The Class is so numerous that joinder of individual members herein is impracticable. The exact number of Class Members as herein identified and described is not known, but given Defendants' claim that the Geneanet database includes more than 8 billion individuals, it is anticipated that the class will contain at least thousands of Illinois residents.

34.     **Commonality (Rule 23(a)(2)):** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members including the following:

    a.  Whether Geneanet uses Plaintiff's and Class Members' names and identities in advertisements for its own commercial benefit;

    b.  Whether Geneanet obtained written consent from Plaintiffs and the Class prior to using their identities in advertisements promoting its platform as required by 765 ILCS 1075/30;

    c.  Whether Defendants' activities and practices referenced above constitute a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*;

    d.  Whether Plaintiffs and Class Members sustained damages as a result of Defendants' activities and practices referenced above, and if so, in what amount;

      e.   What constitutes appropriate injunctive relief to ensure Plaintiffs' privacy and intellectual property rights are not used without their consent by Defendants for commercial purposes.

35.    **Typicality (Rule 23(a)(3))**: Plaintiff's claims are typical of the claims of Class Members, because among other things, Plaintiff and Class Members sustained similar injuries as a result of Defendants' uniform wrongful conduct and their claims all arise from the same events and wrongful conduct by Defendants.

36.    **Adequacy (Rule 23(a)(4))**: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the Class and Class Members, and Plaintiff has retained counsel experienced in complex class action and privacy litigation to prosecute this case on behalf of the Class.

37.    **Predominance & Superiority (Rule 23(b)(3))**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class Members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to Plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

38. **Final Declaratory or Injunctive Relief (23(b)(2)):** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the Class, making final declaratory and/or injunctive relief appropriate with respect to the Class as a whole.

39. **Particular Issues (Rule 23(c)(4))**: Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Violation of Illinois Right to Publicity Act, 765 ILCS 1075/1**

40. Plaintiffs incorporates by reference the foregoing allegations as if fully set forth herein.

41. Defendants have used, and continue to use, Plaintiff's and Class Members' names (and other identifying information) to sell the Geneanet Premium Services.

42. Plaintiff and Class Members have never consented to Defendants' use of their identities for commercial purposes.

43. By using Plaintiff's and Class Members' identities for commercial purposes, Defendants violate the Illinois Right of Publicity Act.

44. On information and belief, Defendants have knowledge of the Illinois Right of Publicity Act and the protections afforded to Plaintiff's and Class Members' identities set forth therein. Despite such knowledge, Defendants have and continue to infringe on Plaintiff's and Class Members' privacy rights as alleged herein, thereby

12

violated IRPA. Defendants' continued violation of IRPA despite their knowledge of its requirements demonstrates that Defendants' violations of IRPA are willful.

45.    Under IRPA, Plaintiff and Class Members are entitled to (1) an injunction requiring Defendants to cease using Plaintiff's and Class Members' names and any attributes of their identities to advertise their products and services; (2) the greater of any award of actual damages (including profits derived from the unauthorized use of Plaintiff's and Class Members' names and identities) or statutory damages of $1,000.00 per violation, (3) and award of punitive damages for Defendants' willful violations of IRPA, and (4) an award of costs and reasonable attorneys' fees. 765 ILCS 1075/40-55.

46.    As a result of Geneanet's misuse of Plaintiff's and Class Members' identities without compensating them or obtaining their consent, Plaintiff and Class Members have suffered economic damages and injury to their intellectual property and privacy rights. Accordingly, Plaintiff and Class Members have suffered actual damages resulting from Defendants' violations of IRPA alleged herein.

47.    Absent injunctive relief, Plaintiff and Class Members will suffer irreparable harm in the form of continued violations of the privacy rights embodied in IRPA, for which there is no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1.    Certify the class as defined above, appointing Ethan Shebesh as class representative, and appointing his counsel as class counsel;

2.    Declare that Defendants' actions described herein constitute a violation of the Illinois Right of Publicity Act;

13

3. Award temporary, preliminary and permanent injunctive relief prohibiting Defendants from continuing to violate the Illinois Right of Publicity Act;

4. Award the greater of actual damages, including the profits derived from the unauthorized use of Plaintiff's and Class Members' identities, or statutory damages of $1,000.00 per violation;

5. Award punitive damages;

6. Award Plaintiff and Class Members' their reasonable litigation expenses and attorneys' fees;

7. Award pre- and post-judgment interest at the highest rate authorized by law; and

8. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues for which a jury trial is allowed.

Dated: June 28, 2023                          Respectfully Submitted,

ETHAN SHEBESH, individually and on behalf of a Class of similarly situated individuals

By:     /s/ Thomas M. Hanson
        *One of Plaintiffs' Attorneys*

Jon Loevy
Michael I. Kanovitz
Thomas M. Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Attorneys for Plaintiffs and the Putative Class*

14