**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ETHAN SHEBESH individually and on behalf of a class of similarly situated individuals,<br><br>       Plaintiff,<br><br>  v.<br><br>ANCESTRY.COM DNA, LLC, a Delaware Corporation and GENEANET, S.A., a French Corporation,<br><br>       Defendants. | Case No. 1:23-cv-04195<br><br>Hon. Nancy L. Maldonado |

**ANCESTRY.COM DNA LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO**
**COMPEL ARBITRATION AND STAY**

### TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................2

LEGAL STANDARDS ..............................................................................................4

ARGUMENT .............................................................................................................5

I.      THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY ...................5

II.     EVEN IF THE COURT HAS PERSONAL JURISDICTION, IT MUST
COMPEL PLAINTIFF'S CLAIM TO ARBITRATION ......................................7

        A.      Plaintiff Formed An Arbitration Agreement With Ancestry ..................................7

        B.      Arbitration May Not Proceed On A Class Basis ....................................................9

        C.      Any Questions Of Arbitrability Must Be Decided By An Arbitrator..................10

        D.      Although Not An Issue For The Court, The Arbitration Agreement Clearly
Covers Plaintiff's Claim ........................................................................11

III.    ALTERNATIVELY, PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM AGAINST ANCESTRY ...........................................12

IV.    A STAY OF PROCEEDINGS IS WARRANTED PENDING RESOLUTION OF
ANCESTRY'S MOTION .................................................................................12

CONCLUSION...........................................................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Abelesz v. OTP Bank*,
   692 F.3d 638 (7th Cir. 2012) ...................................................................6

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ...................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................5

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)..................................................................................5

*Bank of Am., N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ...................................................................7

*Bastidas v. Good Samaritan Hosp.*,
   2014 WL 3362214 (N.D. Cal. July 7, 2014)..........................................12

*Bates v. City of Chicago*,
   726 F.3d 951 (7th Cir. 2013) ...................................................................7

*Broadvision, Inc. v. Gen. Elec. Co.*,
   2009 WL 1392059 (May 5, 2009 S.D.N.Y.) ..........................................12

*Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express
   World Corp.*,
   230 F.3d 934 (7th Cir. 2000) ...................................................................6

*Clark v. Snap, Inc.*,
   2021 WL 2376359 (S.D. Ill. June 10, 2021), *aff'd sub nom. K.F.C. v. Snap
   Inc.*, 29 F.4th 835 (7th Cir. 2022) ...........................................................8

*Collins v. Citibank*,
   2022 WL 683661 (N.D. Ill. Mar. 8, 2022)..............................................13

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*,
   417 F.3d 727 (7th Cir. 2005) .................................................................11

*Davis v. Bank of Am. Corp.*,
   2017 WL 569159 (N.D. Ill. Feb. 13, 2017) .............................................7

ii

*Epic Sys. Corp. v. Lewis*,
　　138 S. Ct. 1612 (2018) ............................................................................................9

*Evans v. Wright Medical Technology, Inc.*,
　　2019 WL 5390548 (N.D. Ind. Oct. 21, 2019) ..........................................................6

*Fischer v. Instant Checkmate LLC*,
　　2021 WL 3033586 (N.D. Ill. July 19, 2021) .............................................................8

*Forby v. One Techs., LP*,
　　2016 WL 11746078 (S.D. Ill. Mar. 25, 2016) ..........................................................8

*Gunn v. Cont'l Cas. Co.*,
　　968 F.3d 802 (7th Cir. 2020) ....................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
　　139 S. Ct. 524 (2019) ........................................................................................10, 11

*In re Holl*,
　　925 F.3d 1076 (9th Cir. 2019) ..................................................................................7

*Howsam v. Dean Witter Reynolds, Inc.*,
　　537 U.S. 79 (2002) ...................................................................................................10

*Hyatt Int'l Corp. v. Coco*,
　　302 F.3d 707 (7th Cir. 2002) ....................................................................................4

*Kaufman v. Am. Exp. Travel Related Servs. Co.*,
　　2008 WL 687224 (N.D. Ill. Mar. 7, 2008) ...............................................................8

*Lamps Plus, Inc. v. Varela*,
　　139 S. Ct. 1407 (2019) .............................................................................................9

*Miracle-Pond v. Shutterfly, Inc.*,
　　2020 WL 2513099 (N.D. Ill. May 15, 2020) ............................................................8

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
　　460 U.S. 1 (1983) ..............................................................................................4, 12

*Price v. Schlee & Stillman, LLC*,
　　2017 WL 2311229 (N.D. Ill. May 26, 2017) .........................................................5, 6

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
　　388 U.S. 395 (1967) .................................................................................................5

*Puncochar v. Revenue Mgmt. of Illinois Corp.*,
　　2017 WL 1208427 (N.D. Ill. Mar. 31, 2017) ...........................................................7

*Rent-A-Ctr., West, Inc. v. Jackson*,
   561 U.S. 63 (2010)...........................................................................................10

*Rosen v. SCIL, LLC*,
   343 Ill. App. 3d 1075 (2003) ...........................................................................8

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
   2021 WL 3511315 (N.D. Ill. Aug. 10, 2021) ...................................................10

*Snyder v. Farnam Cos., Inc.*,
   792 F. Supp. 2d 712 (D.N.J. 2011) ..................................................................12

*Sorge v. Calvary Portfolio Servs., LLC*,
   2011 U.S. Dist. LEXIS 97381 (S.D. Ill. Aug. 30, 2011) ..................................13

*Sosa v. Onfido, Inc.*,
   8 F.4th 631 (7th Cir. 2021) ...............................................................................8

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*
   559 U.S. 662 (2010) ...........................................................................................9

*Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*,
   2022 WL 2828751 (N.D. Ill. July 20, 2022).....................................................9

*Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*,
   474 F.3d 966 (7th Cir. 2007) .............................................................................9

*Welborn Clinic v. MedQuist, Inc.*,
   301 F.3d 634 (7th Cir. 2002) ...........................................................................11

## Rules

Rule 8(a)(2)...........................................................................................................7

## Statutes

9 U.S.C. § 1...........................................................................................................4

9 U.S.C. § 3.......................................................................................................5, 9

## PRELIMINARY STATEMENT

Plaintiff has sued Ancestry.com DNA, LLC ("Ancestry") for purportedly violating his "right of publicity." Plaintiff proceeds from a flawed legal premise—that the presence of publicly-available information on a website might give rise to such a violation—but the Court need not wade into the merits of plaintiff's legal theory at this stage. His claim against Ancestry fails at the threshold for numerous reasons.

*First,* plaintiff's complaint is devoid of any factual allegations that would permit the exercise of personal jurisdiction over Ancestry. His claim is premised on information that appears on a website operated by defendant Geneanet. Even were operation of a universally-available website sufficient to confer jurisdiction over *Geneanet* (it is not), plaintiff does not allege *Ancestry* was in any way involved in the operation of this website. He instead alleges only that defendant Geneanet is Ancestry's "wholly-owned subsidiary." It is well settled that jurisdiction over a *parent* company cannot be based solely on its *subsidiary's* contacts. Accordingly, in the first instance, the Court should dismiss the complaint against Ancestry for lack of personal jurisdiction.

*Second,* even if the Court had personal jurisdiction over Ancestry, this is still the wrong forum for plaintiff's claim. Plaintiff registered for an Ancestry account and, in doing so, expressly agreed to resolve *any* dispute with Ancestry in JAMS arbitration. Should plaintiff dispute whether the agreement is enforceable or whether his dispute falls within its scope, he further agreed such questions must be decided by an arbitrator. Thus, to the extent personal jurisdiction exists (it does not), jurisdiction must be exercised solely to compel plaintiff's claim to arbitration.

*Finally,* although this Court is not the proper forum for plaintiff's action, were the Court to reach the issue, plaintiff fails to state a claim against Ancestry. Indeed, plaintiff fails to allege *any* facts implicating Ancestry in the challenged conduct. He instead alleges only that Geneanet is Ancestry's subsidiary, which is insufficient to give rise to a claim against Ancestry.

- 1 -

## BACKGROUND

**Plaintiff's First Amended Class Action Complaint.** Plaintiff alleges Geneanet.org, which he refers to as the "Geneanet website," hosts user-provided "genealogical information." ECF No. 6 at ¶¶ 13-14. Plaintiff alleges this genealogical information consists of his name (Ethan James Michael Mark Shebesh) and the name of his spouse, which he contends are shown in a list of search results if a user searches for his last name (although he fails to allege any user besides his attorneys ever conducted such a search before he filed his complaint). *Id.* at ¶¶ 17-18. Plaintiff further alleges Geneanet separately offers certain "Premium Services" that are available for a fee. *Id.* at ¶¶ 19-25. Plaintiff alleges Geneanet's hosting this user-provided content (his and his spouse's names) and the availability of paid subscription services through the same Geneanet website violates his "right of publicity." *Id.* at ¶¶ 25-26.

The focus of plaintiff's complaint is the Geneanet website and the alleged actions of Geneanet. *See, e.g., id.* at ¶ 15 ("Upon accessing the ***Geneanet*** website, any person is able to enter the name of any individual via a searchbar on its homepage"); ¶ 25 ("The purpose behind ***Geneanet's*** 'free preview' and 'Profile' pages showing Plaintiff's name and other identity attributes are singular: to entice users to purchase the Premium Services, which include . . . 'full access to the digital Genealogy Library' across the entire Geneanet database."); ¶ 26 ("Had ***Geneanet*** requested Plaintiff's consent, Plaintiff would not have provided it.") (emphases added).

As it pertains to ***Ancestry,*** plaintiff alleges only two facts: (1) Geneanet is "a wholly-owned subsidiary of Ancestry," (*id.* at ¶ 1); and (2) "Ancestry.com DNA, LLC is a privately-held Delaware corporation with its principal place of business in Utah," (*id.* at ¶ 3).

**Plaintiff's Agreement to Arbitrate.** Plaintiff registered for an Ancestry account on July 13, 2017. Declaration of Shauna Jones ("Jones Decl.") at ¶ 5. To create his account, plaintiff provided his full name and email address and established a password. *Id.* at ¶ 6. Before plaintiff

could click "Continue" to create the account, Ancestry advised plaintiff of the following:

> By clicking "Continue" below, you agree to the Ancestry Terms and Conditions and Privacy Statement, and understand that you will receive the benefit of research tips, site updates and special offers by email. You can change your email settings at any time.

*Id.* at ¶¶ 7-8, Ex. 2. This notice was conspicuously located directly above the "Continue" button and written in easy-to-read, 13-point font. *Id.* The notice also contained a visible hyperlink to the Ancestry Terms and Conditions. *Id.* Plaintiff clicked "Continue" to create his account, thereby agreeing to Ancestry's Terms and Conditions. *See id.* at ¶ 9, Ex. 3.

Among other provisions, the Terms and Conditions to which plaintiff agreed when he activated his Ancestry account provided:

> Ancestry has the right, at its sole discretion, to modify this Agreement, as well as the Websites, Content, and the Services, at any time. Changes will be posted on the pertinent Website(s) and/or sent via email, and by changing the date of last revision on this Agreement. If any portion of this Agreement or any change to the Websites, Content, or the Services is unacceptable to you or will cause you to no longer be in compliance with the Agreement, you may cancel your subscription by following the instructions in this Agreement. Continued use of the Websites or the Services now or following posted notices of changes to this Agreement means that you have accepted and agree to be bound by the changes.

*Id.* at ¶¶ 9-10, Ex. 3 at ¶ 6.

The Terms and Conditions have been updated several times since plaintiff first signed up for an Ancestry account. *Id.* at ¶¶ 11-18, Exs. 9-17. Each update included a similar provision that allowed Ancestry to make further modifications, required notice to plaintiff of such changes, and allowed plaintiff to decline by cancelling his account. *Id.* at ¶ 18, Ex. 9 at ¶ 7; Ex. 10 at ¶ 7; Ex. 11 at ¶ 7; Ex. 12 at ¶ 7; Ex. 13 at ¶ 11; Ex. 14 at ¶ 11; Ex. 15 at ¶ 11; Ex. 16 at ¶ 11; and Ex. 17 at ¶ 11.2. On each occasion, Ancestry notified plaintiff of the updates—the most recent updates (on August 15, 2022) were accompanied by an email notice sent to the email address plaintiff had registered with Ancestry. *Id.* at ¶¶ 12-17, Ex. 7. Plaintiff continued using Ancestry's services and

did not delete or cancel his Ancestry account. *Id.* at ¶ 19.

The Ancestry Terms and Conditions to which plaintiff agreed contain an agreement to arbitrate any dispute between plaintiff and Ancestry, with certain limited exceptions that do not apply here. *See id.* at ¶ 18, Ex. 17 at ¶ 10.1 ("the term 'dispute' is intended to be as broad as legally permissible and includes, but is not limited to, all disputes between you . . . and Ancestry, including any of its parents, subsidiaries, predecessors, successors, assigns, or affiliates") (excluding claims that could be asserted in small claims court and claims for patent or copyright infringement). The Terms provide that arbitration will be conducted in JAMS pursuant to the JAMS rules and that the "arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, [or] enforceability . . . of this arbitration agreement." *See id.* at ¶ 10.1.1. The agreement also contains an express class action waiver. *Id.* at ¶ 10.1.3.

## LEGAL STANDARDS

**Personal Jurisdiction.** Courts sitting in diversity may exercise personal jurisdiction over nonresident defendants only when the forum state has jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois exercises personal jurisdiction coextensive with federal due process standards. 735 Ill. Comp. Stat. 5/2-209.

**Arbitration.** The Federal Arbitration Act ("FAA") applies where, as here, the arbitration agreement appears in a contract involving interstate commerce. 9 U.S.C. § 1; ECF No. 6 at ¶¶ 2-3 (alleging plaintiff is a resident of Illinois and Ancestry is a Delaware corporation with its principal place of business in Utah). *See also* Jones Decl. at ¶ 18, Ex. 17 at ¶ 10.1 ("You and Ancestry agree that these Terms affect interstate commerce and that the Federal Arbitration Act governs the interpretation and enforcement of these arbitration provisions"). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues

- 4 -

should be resolved in favor of arbitration[.]" *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation, citation and alterations omitted). If a claim is subject to arbitration, a court lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967). Under Section 3 of the FAA, a court must stay the case until the arbitration has concluded. 9 U.S.C. § 3.

**Failure To State A Claim.** A complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

## I.  THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY

Plaintiff bears the burden to establish personal jurisdiction. *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). "To do so, the plaintiff must allege facts supporting the reasonable inference that an out-of-state defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Price v. Schlee & Stillman, LLC*, 2017 WL 2311229, at *1 (N.D. Ill. May 26, 2017) (quotation, citation, alterations omitted). Plaintiff has failed to do so here.

For general jurisdiction, a plaintiff must plead facts showing that a corporate defendant is "incorporated or headquartered [in the forum State] or [that] its affiliations with the State render it essentially at home." *Id.* at *2 (quotation, citation, alterations omitted). Here, plaintiff concedes Ancestry is a "Delaware corporation with its principal place of business in Utah," (ECF No. 6 at ¶ 3)[1], and he fails to allege any other facts that might show Ancestry is "essentially at home" in Illinois. *See Price*, 2017 WL 2311229 at *2 (general jurisdiction "should not lightly be found") (quotation, citation omitted).

"Specific jurisdiction is likewise narrowly defined." *Id.* To plead specific jurisdiction, a plaintiff must allege facts showing the defendant (1) purposefully directed its activities at the forum or purposefully availed itself of the privilege of conducting business in that state; and (2) the alleged injury arises out of the defendant's forum-related activities. *Id.* (citation omitted). Here, aside from Ancestry's out-of-state incorporation and headquarters, the only other fact plaintiff alleges regarding Ancestry is that Geneanet—whose website allegedly hosts the information on which plaintiff bases his claim—is Ancestry's "wholly-owned subsidiary."[2] ECF No. 6 at ¶ 1.

The Seventh Circuit "has consistently rejected personal jurisdiction over a parent company based solely on its subsidiary's contacts." *Evans v. Wright Medical Technology, Inc.*, 2019 WL 5390548, at *5 (N.D. Ind. Oct. 21, 2019) (citing *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000)); *see also Abelesz*

---

[1] Although plaintiff has alleged Ancestry.com DNA, LLC is a "Delaware corporation with its principal place of business in Utah," in fact it is a Virginia LLC with its principal place of business in Utah. Jones Decl. at ¶ 3.

[2] In fact, although Ancestry.com DNA, LLC and Geneanet ultimately share some common corporate parents, Geneanet is not a wholly-owned subsidiary of Ancestry.com DNA, LLC. Geneanet's direct parent is Ancestry Ireland UC, an Irish entity. Jones Decl. at ¶ 4.

*v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012) (finding that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent").

Because plaintiff fails to allege *Ancestry* has engaged in any acts that might give rise to jurisdiction, this Court lacks jurisdiction over Ancestry.[3]

## II. EVEN IF THE COURT HAS PERSONAL JURISDICTION, IT MUST COMPEL PLAINTIFF'S CLAIM TO ARBITRATION

### A. Plaintiff Formed An Arbitration Agreement With Ancestry

When plaintiff registered for his Ancestry account, Ancestry provided clear, conspicuous notice that doing so required him to agree to the Terms, and plaintiff affirmatively clicked the button signifying his assent to the agreement, including the arbitration provision. Jones Decl. at

---

[3]     In various places in his complaint, plaintiff alternately references "Defendant" or "Defendants" without specifying whether the allegation pertains to either (or both) defendants. *See, e.g.*, ECF No. 6 at ¶ 7 ("this Court has personal jurisdiction over ***Defendant***"); ¶ 20 ("***Defendants*** advertise the Premium Services"); ¶ 26 ("Neither Plaintiff nor Class Members provided ***Defendant*** with written consent") (emphases added).  The allegations that lump "Defendants" together or fail to specify which "Defendant" is alleged to have engaged in the challenged conduct should be disregarded: "Rule 8(a)(2) precludes lumping . . . defendants together without clarifying which plaintiff alleges what wrongdoing against which defendant." *Davis v. Bank of Am. Corp.*, 2017 WL 569159, at *1 (N.D. Ill. Feb. 13, 2017).  *See also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal . . . Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed."); *Bates v. City of Chicago*, 726 F.3d 951, 958 (7th Cir. 2013) (affirming dismissal where "the amended complaint failed to specifically allege how [each defendant was] 'actively involved' . . . and lumped the defendants together without sufficient detail"); *Puncochar v. Revenue Mgmt. of Illinois Corp.*, 2017 WL 1208427, at *2 (N.D. Ill. Mar. 31, 2017) (dismissing complaint where the plaintiff "lumps all of the defendants together without describing their relationship").

In all events, the few places where plaintiff does provide specificity appear to take aim solely at the website allegedly operated by defendant Geneanet, not Ancestry. *See, e.g.*, ECF No. 6 at ¶ 14 ("***Geneanet*** allows its users to upload family history to build out an online family tree"); ¶ 25 ("The purpose behind ***Geneanet's*** 'free preview' and 'Profile' pages showing Plaintiff's name and other identity attributes are singular: to entice users to purchase the Premium Services, which include . . . 'full access to the digital Genealogy Library' across the entire ***Geneanet*** database."); ¶ 26 ("Had ***Geneanet*** requested Plaintiff's consent, Plaintiff would not have provided it.") (emphases added).

¶¶ 5-9. "Federal courts . . . have recognized the general enforceability of . . . online agreements that require affirmative user assent." *In re Holl*, 925 F.3d 1076, 1085 (9th Cir. 2019) (citations omitted). *See also Forby v. One Techs., LP*, 2016 WL 11746078, at *7-8 (S.D. Ill. Mar. 25, 2016) (applying Illinois law and finding assent to arbitration where "the hyperlink [to the terms containing the arbitration agreement]. . . is contained within text directly above the 'Continue' button that a user must press in order to continue the sign-up process");[4] *Fischer v. Instant Checkmate LLC*, 2021 WL 3033586, at *6 (N.D. Ill. July 19, 2021) (compelling arbitration where plaintiff clicked "Continue," and was advised that doing so was an affirmation of the terms of service); *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (compelling arbitration where plaintiff clicked "Accept" and thus accepted the Terms of Use); *K.F.C. by & though Clark v. Snap, Inc.*, 2021 WL 2376359, at *1 (S.D. Ill. June 10, 2021), *aff'd sub nom. K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022) (compelling arbitration where "[t]o create the account, it was necessary for Plaintiff to click on a button to express her assent to Snapchat's Terms of Service").

Similarly, courts recognize that a consumer assents to updated terms and conditions where, as here, he continues to use the services after the updated terms go into effect. *See, e.g., Miracle-Pond*, 2020 WL 2513099 at *5 ("Illinois courts have repeatedly recognized the enforceability of arbitration provisions added via a unilateral change-in-terms clause"); *Rosen v. SCIL, LLC*, 343 Ill. App. 3d 1075, 1082 (2003) (enforcing arbitration agreement added to cardholder agreement

---

[4]    Although Ancestry's terms contain a Utah choice-of-law provision, the law of the forum state (Illinois) controls the threshold question whether the parties formed a contract. *See, e.g., Kaufman v. Am. Exp. Travel Related Servs. Co.*, 2008 WL 687224, at *4 (N.D. Ill. Mar. 7, 2008). Under Illinois choice-of-law rules, "forum law is applied 'unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply.'" *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (quoting *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)).  No conflict exists here.

because "[i]f plaintiff did not wish to agree to the new terms in his credit card agreement, he simply should have stopped using the card").

Because there can be no dispute plaintiff has an arbitration agreement with Ancestry, his claim must be sent to arbitration and this action should be stayed pending completion of any arbitration. *See* 9 U.S.C. § 3; *Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, 2022 WL 2828751, at *9 (N.D. Ill. July 20, 2022) (staying case pending arbitration proceedings); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory.").

### B.    Arbitration May Not Proceed On A Class Basis

Plaintiff's arbitration agreement provides that plaintiff and Ancestry may only resolve disputes on an individual basis and prohibits class claims. *See* Jones Decl. at ¶ 18, Ex. 17 at ¶ 10.1.3. In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, the Supreme Court held "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U.S. 662, 684 (2010) (emphasis in original). The Supreme Court has consistently enforced this precedent and has repeatedly upheld class waivers in arbitration agreements. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.").

The arbitration agreement here is clear and expressly states the parties' intentions that arbitration may proceed only in an individual capacity. "[C]ourts and arbitrators must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen*, 559 U.S. at 682 (internal quotations omitted). Thus, arbitration may not proceed on a class basis.

### C.        Any Questions Of Arbitrability Must Be Decided By An Arbitrator

The Supreme Court has recognized "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. If the parties have "clearly and unmistakably" agreed that questions of arbitrability must be decided by the arbitrator, such provisions must be enforced. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." Rather, "[i]n those circumstances, a court possesses no power to decide the arbitrability issue.").

Here, plaintiff's arbitration agreement clearly and unmistakably delegates issues of arbitrability to the arbitrator. *See* Jones Decl. at ¶ 18, Ex. 17 at ¶ 10.1.1 (agreeing the "arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, [or] enforceability . . . of this arbitration agreement," and further incorporating the JAMS rules). Courts have repeatedly held the language contained in plaintiff's arbitration agreement evinces such an intent. *See, e.g.*, *Rent-A-Ctr.*, 561 U.S. at 71 (provision of employment agreement which delegated to arbitrator the exclusive authority to resolve any dispute relating to the agreement's enforceability, including any claim that all or any part of the agreement was void or voidable, was a valid delegation agreement). *See also Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 2021 WL 3511315, at *5 (N.D. Ill. Aug. 10, 2021) ("Every federal court of appeals to consider the question–twelve of

- 10 -

thirteen–has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'") (quotations, citation omitted).

Because plaintiff "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, the Court need only determine that an agreement exists and the inquiry must end there. *See Schein*, 139 S. Ct. at 529. To the extent plaintiff challenges, for example, the scope, enforceability or validity of his agreement, those issues must be decided by the arbitrator.

### D.  Although Not An Issue For The Court, The Arbitration Agreement Clearly Covers Plaintiff's Claim

Because disputes regarding the scope of the arbitration agreements are reserved for the arbitrator, the Court need not address this issue. However, there can be no fair dispute that plaintiff's arbitration agreement covers the claim here. Plaintiff's agreement expressly includes ***any*** dispute that arises between plaintiff and Ancestry, with limited exceptions that do not apply here. *See* Jones Decl. at ¶ 18, Ex. 17 at ¶ 10.1 ("the term 'dispute' is intended to be as broad as legally permissible and includes, but is not limited to, all disputes between you . . . and Ancestry, including any of its parents, subsidiaries, predecessors, successors, assigns, or affiliates") (excluding claims that could be asserted in small claims court and claims for patent or copyright infringement). Courts analyzing arbitration agreements with similar language have held it must be interpreted broadly. *See, e.g.*, *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733-34 (7th Cir. 2005) (concluding "the arbitration clause in the Participation Agreement is broad" where "It governs 'any dispute arising out of this Agreement.'"); *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (characterizing an arbitration clause covering all claims "arising out of" the parties' agreement as "a very broad, standard arbitration clause."). And although plaintiff's claim falls squarely within the scope of the agreement, to the extent there is any question, all

"doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"
*Moses H. Cone*, 460 U.S. at 24-25.

## III. ALTERNATIVELY, PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST ANCESTRY

Although the Court need not weigh in on the merits of plaintiff's claims—which must be resolved in arbitration—plaintiff fails to allege *any* facts to support his assertion *Ancestry* purportedly violated his "right of publicity," and instead alleges only that Ancestry is the parent of the company that operates the website on which his name purportedly appears.  It is well settled that "[a] parent corporation cannot be held liable for the acts of its subsidiaries solely because of its ownership of those subsidiaries."  *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011).  *See also Broadvision, Inc. v. Gen. Elec. Co.*, 2009 WL 1392059, at *3 (May 5, 2009 S.D.N.Y.) (dismissing claim for direct infringement against parent corporation because the plaintiff "failed to allege any acts by which [the parent company] infringed [plaintiff's] copyright"); *Bastidas v. Good Samaritan Hosp.*, 2014 WL 3362214, at *4-5 (N.D. Cal. July 7, 2014) (dismissing claim against parent company where the plaintiff failed to allege facts that would support direct liability for the parent company).

Thus, even could plaintiff state a claim against Geneanet (he cannot), there is absolutely no alleged factual basis for his claim against *Ancestry*, which must be dismissed.

## IV. A STAY OF PROCEEDINGS IS WARRANTED PENDING RESOLUTION OF ANCESTRY'S MOTION

Because this Court is not the proper forum for plaintiff's claims, Ancestry also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery).  Plaintiff should not be permitted to ignore his arbitration agreement, pursue a lawsuit in federal court, and force Ancestry to participate in litigation in violation of the terms of the parties' agreement.  For these reasons, courts routinely stay all proceedings pending the

resolution of a motion to compel arbitration. *See, e.g.*, *Collins v. Citibank*, 2022 WL 683661, at *1 (N.D. Ill. Mar. 8, 2022) (staying discovery of questions irrelevant to motion to compel arbitration pending resolution of that motion); *Sorge v. Calvary Portfolio Servs., LLC*, 2011 U.S. Dist. LEXIS 97381, at *2 (S.D. Ill. Aug. 30, 2011) (staying discovery pending resolution of motion to compel arbitration and explaining "the rules governing discovery in arbitration proceedings differ significantly from the Federal Rules of Civil Procedure, if their Motion to Compel Arbitration is granted much, if not all, of the discovery in this case would be superfluous").

## CONCLUSION

For the reasons shown above, plaintiff's claim should be dismissed because this Court lacks personal jurisdiction over Ancestry. Should the Court determine it has jurisdiction, Ancestry's motion to compel arbitration should be granted and all proceedings in this action should be stayed pending (1) a decision on this motion, and (2) completion of any arbitration. Alternatively, plaintiff's case should be dismissed for failure to state a claim.

Dated:  August 18, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ Daniel Lombard
     Daniel Lombard

Daniel Lombard
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
daniellombard@quinnemanuel.com

Shon Morgan (*pro hac vice application
forthcoming*)
John W. Baumann (*pro hac vice application
forthcoming*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Cristina Henriquez (*pro hac vice application
forthcoming*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendant Ancestry.com DNA,
LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, certify that on August 18, 2023, I caused a copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record via the Court's CM/ECF automated filing system.

By: <u>/s/ *Daniel Lombard*</u>
Daniel Lombard