IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Ethan Shebesh, individually and on behalf of a class of similarly situated individuals, | No. 23 CV 04195 |
| Plaintiff, | Honorable Nancy L. Maldonado |
| v. | |
| Geneanet, S.A. | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ethan Shebesh brings this putative class action lawsuit against Defendant Geneanet, S.A. ("Geneanet") for an alleged violation of the Illinois Right to Publicity Act ("IRPA"), 765 ILCS 1075/1. Shebesh alleges that Geneanet unlawfully used Shebesh and the putative class members' names and other identifying information to advertise and sell premium services offered on Geneanet's website. Geneanet has moved to dismiss Shebesh's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and failure to state a claim, respectively. (Dkt. 25.)[1] Alternatively, Geneanet has moved to compel arbitration pursuant to the Federal Arbitration Act. (*Id.*) For the reasons stated in this Order, Geneanet's 12(b)(2) motion to dismiss is granted. In short, Shebesh has failed to establish that this Court has personal jurisdiction over Geneanet. For this reason, the Court will not rule on Geneanet's 12(b)(6) motion or its motion to compel arbitration at this time. Shebesh may amend the Complaint to correct the deficiencies, if possible, by May 31, 2024.

**Background[2]**

Geneanet owns and operates an interactive genealogy website (www.geneanet.org) wherein individuals may share their genealogical information to connect with relatives and other Geneanet users. (Dkt. 6 ¶ 13.) Geneanet's website allows its users to upload their own family history to create an online family tree. (*Id.* ¶ 14.) The information uploaded by Geneanet's users may include relatives' names, as well as documents identifying those individuals, photographs, and news articles. (*Id.*)

Some of the content hosted on Geneanet's website is available to the public for free. (*Id.* ¶ 15.) Users accessing Geneanet's website can search for individuals listed on the website by name, for instance, without paying for such service. (*Id.*) Shebesh alleges that after a user accesses a

---

[1] In citations to the docket, page numbers are taken from the CM/ECF headers.
[2] The Court takes the factual background from the well-pled allegations in the Complaint (Dkt. 6) and assumes the allegations to be true for the purposes of the instant motion. *See, e.g.*, *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

1

certain number of pages for free, the user is prompted to sign up for a free "teaser" membership. (*Id.*) The "teaser membership" Shebesh references is a free trial of Geneanet's premium membership, which users must pay a fee to access. The premium membership provides access to additional information on the website and additional features that are not available to non-paying users. (*Id.* ¶ 19.) If a user signs up for this free trial, that user would then be able to search for and view additional information on an individual's profile. (*Id.* ¶ 16.)

Shebesh alleges that a search on Geneanet's website for his name returned a profile with Shebesh's full name as well as his spouse's full name, despite the fact that Shebesh is not a customer of Geneanet and did not upload his information to the website. (*Id.* ¶¶ 18, 28.) Shebesh alleges that on the free preview page for the profile associated with Shebesh's name, Geneanet also advertises its premium membership. (*Id.* ¶ 21.) If a user seeks additional information on Shebesh's profile by, for instance, clicking on one of the profile tabs, the user is again solicited to purchase a premium membership in order to see that information. (*Id.* ¶ 24.)

Ultimately, Shebesh claims that Geneanet's advertisement of its premium membership on a profile page that identifies Shebesh violates the IRPA because Geneanet is using Shebesh's identity to advertise the premium membership, and Shebesh did not give Geneanet consent to do so. (*Id.* ¶ 26.) In response to Shebesh's Complaint, Geneanet filed the instant motion to dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "read[s] the complaint liberally with every inference drawn in favor of [the] plaintiff." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Where the Court rules on a defendant's Rule 12(b)(2) motion without an evidentiary hearing, "the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." *Curry*, 949 F.3d at 393.

If the defendant, however, submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff." *Felland*, 682 F.3d at 672.

## Discussion

Geneanet moves to dismiss Shebesh's Amended Complaint on the grounds that this Court does not have personal jurisdiction over Geneanet and that Shebesh has failed as a matter of law to state an IRPA violation. In the alternative, Geneanet moves for an order compelling arbitration. For the reasons more fully explained below, Geneanet's motion to dismiss for lack of personal

jurisdiction is granted because Shebesh has not carried his burden to show that Geneanet intentionally directed its conduct at Illinois. Because this Court does not have personal jurisdiction over Geneanet, it will not address Geneanet's argument that Shebesh has failed to state an IRPA violation or Geneanet's motion to compel arbitration at this time.

### I.     Shebesh has failed to establish personal jurisdiction over Geneanet.

In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Although there may be theoretical differences between the federal and state constitutional standards, the Seventh Circuit has observed that "no Illinois case has provided a definitive explanation" of these differences. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Both constitutional standards essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable. *See KM Enters.*, 725 F.3d at 732. Thus, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry v. Revolution Lab'ys., LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (citation omitted); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010).

Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

Personal jurisdiction comes in two forms: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). A defendant is subject to general jurisdiction only where its contacts with the forum state are so "continuous and systematic" that it can be considered "at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence."). Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). Here, Shebesh does not argue that Geneanet is "at home" in Illinois, and therefore concedes the Court does not have general jurisdiction over Geneanet. Accordingly, the Court will only analyze whether specific jurisdiction over Geneanet is proper.

For purposes of specific jurisdiction, the Court does not inquire into the plaintiff's contacts with the forum state but rather looks to whether "the relation between the defendant and the forum '[] arise[s] out of contacts that the defendant *himself* creates with the forum[.]" *Advanced Tactical*

3

*Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (emphasis in original). Moreover, "not just any contacts will do . . . the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Id.* (quoting *Walden*, 571 U.S. at 283). In other words, courts must assess "whether the relationship between the plaintiff's claim and the defendant's contacts with the state ma[k]e it fair to call the defendant into court there." *uBID, Inc. v. GoDaddy Grp, Inc.*, 623 F.3d 421, 427 (7th Cir. 2010).

The Seventh Circuit has distilled the three essential requirements for the exercise of specific jurisdiction over an out-of-state defendant as follows:

> First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Curry*, 949 F.3d at 398 (citing *Lexington*, 938 F.3d at 878).

Geneanet moves to dismiss the Amended Complaint on the grounds that Shebesh has failed to establish that this Court may exercise personal jurisdiction over Geneanet. (Dkt. 26 at 6.) Geneanet is a French company with no physical presence in the United States. (*Id.*) While Geneanet operates a "universally-available website through which users from anywhere in the world could choose to upload or view information[,]" Geneanet argues it does not directly target Illinois. (*Id.* at 11.)

Geneanet filed an affidavit in support of its 12(b)(2) motion from its president and Chief Operating Officer ("COO"), Christophe Becker. (Dkt. 27.) Becker attests that Geneanet does not have any offices or employees in the United States, nor does Geneanet advertise in the United States. (*Id.* ¶¶ 3, 7.) Further, according to Becker, only 5.16% of Geneanet's paying subscribers are located in the United States, although he does not provide specifics indicating in what states those subscribers reside. (*Id.* ¶ 7.) Becker also explains that users of Geneanet's website submit the content that Shebesh complains of—namely the personal identifying information such as Shebesh's name and his spouse's name. (*Id.* ¶ 4.) Geneanet does not track from where it receives such information. (*Id.*)

Shebesh, on the other hand, relies on his Amended Complaint alone and argues that Geneanet has purposefully availed itself of jurisdiction in Illinois by "knowingly acquir[ing] the information of Illinois residents, and then us[ing] that information to advertise its products in direct violation of Illinois law." (Dkt. 37 at 7.) Shebesh explains that even though only about 5% of Geneanet's subscribers are located in the United States, since Geneanet alleges it has more than 5 million subscribers, dividing that percentage proportionally across the United States, Shebesh concludes there may be up to 10,000 users in Illinois. (*Id.* at 9.) Shebesh further argues that Geneanet, in attempting to enforce the arbitration provision of Ancestry's terms of service against Shebesh, has essentially consented to jurisdiction in Illinois. The Court will take up each of

4

Shebesh's arguments below.

### a. Shebesh has not met his burden of showing that Geneanet has purposefully directed its conduct at Illinois.

Shebesh argues that Geneanet purposefully directs its conduct at the forum state because it "extracts the names and other personal information of individuals [in Illinois] from its users." (*Id.*) The Amended Complaint alleges that Geneanet "purposefully subject[s]" itself to jurisdiction in Illinois by "knowingly using the identities of Illinois residents to advertise the Premium Services" and that Geneanet has a "practice of acquiring information sufficient to identify Illinois residents, and then using that information to advertise the Premium Services to its users." (Dkt. 6 ¶ 27.) Further, Shebesh alleges that Geneanet "directly advertise[s] and sell[s] the Premium Services to all of [its] users, including Illinois residents." (*Id.*) Shebesh elaborates in his opposition briefing by arguing that Geneanet "extracts the names and other personal information from its users" and knowingly "exploits" the identities of individuals in Illinois. (Dkt. 37 at 9.) Geneanet, on the other hand, argues that operating a website that is universally accessible is insufficient to confer personal jurisdiction over Geneanet. (Dkt. 26 at 11.)

The Court agrees with Geneanet that generally, simply owning and operating a website that is accessible in Illinois is insufficient to confer personal jurisdiction. *See be2 LLC*, 642 F.3d at 558 (cautioning courts analyzing questions about personal jurisdiction involving online contacts "to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive'"); *Hemi Grp., LLC*, 622 F.3d at 760. In fact, "[i]f the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2*, 642 F.3d at 559. Rather, to confer specific jurisdiction, the defendant must have intentionally targeted the forum state. *Id.*

Further, Geneanet provided an affidavit refuting that it personally targets Illinois, and Shebesh failed to provide any affirmative evidence contesting this affidavit. (Dkt. 27.) Becker's affidavit explicitly states that Geneanet does not solicit content regarding individuals in Illinois and that Geneanet does not advertise its services in Illinois. (Dkt. 27, ¶¶ 4–7.) Moreover, the affidavit states that only 5.16% of Geneanet's subscribers are located in the United States.[3] (*Id.* ¶ 7.) Shebesh filed no affidavit or other evidence on the record refuting these claims, nor did Shebesh request jurisdictional discovery to further investigate Geneanet's contacts with Illinois. While the Court must resolve any factual disputes at this stage in Shebesh's favor, Shebesh has submitted no affirmative evidence to create any factual dispute. *See Matlin*, 921 F.3d at 705. Accordingly, the Court finds that Shebesh has not met his burden in establishing personal jurisdiction over Geneanet.

---

[3] Shebesh speculates that this means there may be up to 10,000 or more users in Illinois, if the users are spread proportionally across the United States. (Dkt. 37 at 9.) The Court, however, has no basis for assuming the users are spread proportionally across the country and is not required to accept such speculation as fact at this stage. *See Comm. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) ("[E]ven at the motion to dismiss stage, [courts] are 'not obliged to accept as true legal conclusions or unsupported conclusions of fact.'") (quoting *Cty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)).

Despite his failure to provide affirmative evidence, Shebesh points to *Bonilla v. Ancestry.com Operations Inc.* and *Lukis v. Whitepages Incorporated* as support that personal jurisdiction over Geneanet is proper here. (Dkt. 37 at 10.) The Court, however, finds that both are inapposite. In *Bonilla*, the court held that Ancestry was subject to personal jurisdiction because it purposefully directed its activities at Illinois. 574 F. Supp. 3d 582, 589 (N.D. Ill. 2021). In that case, the plaintiff brought similar claims that Ancestry used the plaintiff's name, identity, image and likeness to advertise and solicit Ancestry's paid products without the plaintiff's consent. *Id.* at 587. The plaintiff alleged that Ancestry received yearbook records, both hard copy and digitized records, from Illinois residents. *Id.* at 589. The plaintiff also alleged that Ancestry promoted its subscription services to Illinois residents through video advertisements that were shown at libraries in Illinois. *Id.* For these reasons, the court found that the plaintiff had made a "prima facie showing of jurisdictional facts." *Id.* at 590.

Here, in comparison, Shebesh does not allege that Geneanet knowingly received his information from residents of Illinois, and Becker attested that Geneanet does not track where users who submit the information are located. (*See* Dkt. 27 ¶ 4.) While Shebesh alleges that Geneanet "directly advertise[s] and sell[s] the Premium Services to all of their users, including Illinois residents[,]" Becker's affidavit directly refutes this and Shebesh failed to submit any evidence to create a factual dispute. (Dkt. 6 at 27); *see Matlin*, 921 F.3d 701. Further, as explained above, simply operating a website that is accessible by Illinois residents is insufficient to show that Geneanet targeted the Illinois market. *be2*, 642 F.3d at 559. *Bonilla* is therefore distinguishable from this case, where Shebesh has not carried his burden in establishing that personal jurisdiction is proper.

Similarly in *Lukis*, the plaintiffs brought a putative class action against Whitepages alleging that its website, which sold "background reports," violated the IRPA by using the plaintiff's personal information in connection with advertising products available on its website. 454 F. Supp. 3d 746, 751–53 (N.D. Ill. 2020). There, the plaintiffs argued that the defendant "knowingly searches for and obtains private and public records regarding Illinois residents" and uses the identifying information it obtains "without their consent, in free previews used to advertise its subscription services." *Id.* at 757. The defendant argued that it did not sell publicly available information about only Illinois residents, and therefore did not purposefully direct its conduct at Illinois. *Id.* at 758. The court ultimately determined that the plaintiffs sufficiently alleged purposeful direction at Illinois by alleging that the defendant "engaged in repeated, intentional conduct directed at Illinois and its residents[.]" *Id.*

*Lukis*, however, is distinguishable. First, unlike Geneanet's passive role in hosting its users' uploaded content without regard to their location, in *Lukis*, the defendant was alleged to have taken more active steps to knowingly obtain records regarding Illinois residents. *Id.* at 757. Second, there is no mention in *Lukis* that the defendant submitted evidence contesting personal jurisdiction— rather the court appears to have found that the plaintiffs stated a prima facie case for personal jurisdiction over the defendant on the parties' memoranda alone. *Id.* at 757–58. Here, however, Geneanet submitted an affidavit contesting personal jurisdiction, and Shebesh has failed to refute that evidence or even seek evidence to rebut it. *Lukis* is therefore inapplicable.

While the Court has already concluded that Shebesh has failed to meet his burden in establishing personal jurisdiction here, the Court will briefly address Geneanet's argument that this Court should adopt the holding of a recent Ninth Circuit ruling which held that the owner and operator of a website was not subject to personal jurisdiction where the website passively collected consumer data and information. (Dkt. 39 at 5) (citing *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. Nov. 28, 2023). In *Briskin*, the court analyzed whether it had personal jurisdiction over the defendant, Shopify, which offers a "web-based payment processing platform to merchants nationwide" and when processing those payments, "obtain[s] the personal information of those merchants' customers." 87 F.4th at 409. The court categorized *Briskin* as a case of first impression that had not yet been addressed by any other circuit—specifically the issue of whether extracting and retaining consumer data of California residents exposed Shopify to personal jurisdiction in California. *Id.* Geneanet argues the reasoning of *Briskin* must be applied to the Court's decision here. (Dkt. 39 at 8.)

"It is axiomatic that decisions from one circuit, while deserving respectful consideration, are not binding on district courts in another circuit." *United States v. Diggs*, 385 F. Supp. 3d 648, 659 (N.D. Ill. 2019) (citing *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994)). The reasoning in this opinion is not inconsistent with the holding in *Briskin* and considering the abundance of Seventh Circuit precedent on the issue of personal jurisdiction over owners and operators of interactive websites, the Court need not explicitly adopt the reasoning of *Briskin* in reaching the instant holding. *See Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1013 (N.D. Ill. 2012) (noting that district courts may give "respectful consideration" to decisions by other courts of appeals "[i]n the absence of Seventh Circuit precedent.").

The Court finds that Shebesh has failed to meet his burden in establishing that this Court has jurisdiction over Geneanet.

### b. Geneanet has not consented to jurisdiction in Illinois.

Shebesh argues that Geneanet consented to jurisdiction in Illinois by attempting to enforce the arbitration provision contained in Ancestry's terms and conditions, which provides for arbitration in the county where the Ancestry user resides. (Dkt. 37 at 9.) In its motion to compel arbitration, brought in the alternative to its motion to dismiss, Geneanet argues that Shebesh created an Ancestry.com account, and in doing so agreed to accept Ancestry's terms of service. (Dkt. 26 at 12.) Because the Court has already determined it does not have personal jurisdiction over Geneanet, it will not address the merits of Geneanet's motion to compel arbitration at this time, but will address whether the arbitration provision constitutes a waiver by Geneanet of any objection it has to personal jurisdiction in Illinois.

Because the arbitration provision covers any dispute between the user (here, Shebesh) and Ancestry or any of Ancestry's "subsidiaries" or "affiliates," Geneanet argues this dispute falls within the arbitration provision because Geneanet is purportedly a subsidiary or affiliate of Ancestry. (*Id.* at 8, 16.)[4] Shebesh argues that Geneanet's position—that it is a party to Ancestry's

---

[4] The Amended Complaint alleges that Geneanet is a wholly-owned subsidiary of Ancestry. (Dkt. 6 ¶ 1.) In its briefing, Geneanet does not provide any further background on its relationship with Ancestry but argues it may enforce the arbitration provision because Shebesh "concedes Geneanet is a 'subsidiary of Ancestry.'" (Dkt. 26 at 16.)

terms and service—evidences Geneanet's consent to jurisdiction in Illinois. (Dkt. 37 at 8–9.) This is because the terms and conditions mandate arbitration "in the county where [the user] reside[s] at the time of filing." (*Id.* at 9.) Because Shebesh resides in Illinois, and because Geneanet is now attempting to enforce this arbitration provision against Shebesh, Shebesh concludes that Geneanet has waived any objection to jurisdiction here. (*Id.*)

"To give consent to personal jurisdiction is to waive objections to a court's assertion of personal jurisdiction. And a waiver is defined as 'a conscious relinquishment of a known right.'" *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 926 (N.D. Ill. 2017) (quoting *Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 651 (7th Cir. 2014)). To show an express or implied waiver, "the evidence must show a clear, unequivocal and decisive act of a party demonstrating an *intent* to waive the known right." *Id.*

Geneanet points to a number of decisions rejecting Shebesh's argument equating an agreement to arbitrate in a certain forum with consent to personal jurisdiction in that forum. (Dkt. 39 at 9.) *United Financial Mortgage Corporation v. Bayshores Funding Corporation* is instructive. 245 F. Supp. 2d 884, 892 (N.D. Ill. 2002). There, the parties entered into an agreement which contained an arbitration provision that specified the arbitration would take place in Illinois. *Id.* at 889. The plaintiff sued in federal court in Illinois, and the defendants moved to dismiss for lack of personal jurisdiction. *Id.* In opposing the motion to dismiss, the plaintiff argued that by agreeing to the arbitration provision requiring arbitration in Illinois, the defendants consented to personal jurisdiction in Illinois. *Id.* at 892. The court held, however, that the arbitration provision on its own was insufficient to confer personal jurisdiction because the arbitration clause "only pertains to the arbitration of disputes between [the parties]; it does not address a forum for litigation." *Id.* The court recognized that the Seventh Circuit had not confronted the issue but cited to a number of other circuit decisions reaching the same conclusion. *Id.* (collecting cases).

The Court further notes that Geneanet is not a party to the terms and conditions, which appears to be a contract between Shebesh and Ancestry only. (*See* Dkt. 11-3 at § 1 ("You are legally bound by this Agreement; which is between you and Ancestry.com Operations Inc."); Dkt. 11-3 at § 9 ("There shall be no third-party beneficiaries to this Agreement.")) While Geneanet may now be attempting to enforce the arbitration provision, it does not appear that Geneanet ever actually agreed to the terms and conditions. A defendant may consent to personal jurisdiction of the court through a forum selection clause, but a court will only enforce such clauses where they have "been obtained through 'freely negotiated' agreements[.]" *Burger King Crop. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). Again, Geneanet does not appear to be a party to the terms and conditions, and therefore could not have participated in freely negotiating its terms. Shebesh acknowledges as much, arguing that Shebesh and Geneanet never mutually assented to arbitrate Shebesh's claim and that they have no contractual relationship. (Dkt. 37 at 11.)

---

Shebesh, however, in his opposition briefing, points to an affidavit previously filed by Ancestry.com DNA, LLC ("Ancestry") before Ancestry was dismissed as a defendant. (Dkt. 37 at 10–11) (citing Dkt. 11 ¶ 4.) In that affidavit, Ancestry's affiant explicitly states that "Geneanet, S.A. is not a wholly-owned subsidiary of Ancestry.com DNA, LLC" although the two entities do "share come common corporate parents[.]" (Dkt. 11 ¶ 4.) Because the Court is not addressing the merits of Geneanet's motion to compel arbitration, it will not address this inconsistency at this time.

For these reasons, the Court does not find that Geneanet consented to personal jurisdiction in Illinois by seeking to enforce the arbitration provision in Ancestry's terms and conditions.

## Conclusion

For the foregoing reasons, Geneanet's motion to dismiss for lack of personal jurisdiction is granted.

ENTERED:  5/3/24

_____
Nancy L. Maldonado
United States District Court Judge